JS-6
O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREZA HOLT, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TY WARNER HOTELS & RESORTS, LLC, et al.,<br><br>Defendants. | Case No.: 2:22-cv-01839-MEMF(Ex)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY PROCEEDINGS [ECF NO. 10] AND DENYING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MOTION TO STRIKE PARAGRAPH 68 OF FIRST AMENDED COMPLAINT AS MOOT [ECF NOS. 17, 18]** |

Before the Court are Defendants Ty Warner Hotels and Resorts, LLC and Ty Warner's Motion to Compel Arbitration, Dismiss Class Claims, and Stay Proceedings, Motion to Dismiss the First Amended Complaint, and Motion to Strike Paragraph 68 of the First Amended Complaint. The Court held oral argument on these matters on June 16, 2022. For the reasons stated herein, the Court hereby GRANTS the Motion to Compel Arbitration, Dismiss Class Claims, and Stay Proceedings. The Court further DENIES the Motion to Dismiss the First Amended Complaint and Motion to Strike Paragraph 68 of the First Amended Complaint as MOOT.

/ / /

1

# BACKGROUND

## I. Factual Background[1]

Plaintiffs Andreza Holt and Christopher Martinez (collectively, the "Holt Plaintiffs") are employed by Four Seasons at The Biltmore Santa Barbara (the "Biltmore"). FAC ¶ 2. Defendant Ty Warner ("Warner") is the owner, operator, and controller of Defendant Ty Warner Hotels & Resorts, LLC ("Ty Warner Hotels") (collectively, the "Warner Defendants"). *See id.* ¶ 20. Ty Warner Hotels owns the Biltmore and has contracted with Four Seasons ("Management Agreement"), who employs and manages the employees working at the Biltmore. *See id.* ¶ 3.

As a condition of their employment with Four Seasons at the Biltmore, the Holt Plaintiffs signed the "Empact Agreement," which covers rules and conditions of employment, compensation and benefits, standards of conduct, complaint and arbitration procedures, and separation from employment. *See id.* ¶ 27; *see also* ECF Nos. 22-3, Ex. A ("Holt Empact Agreement"), ECF No. 22-2, Ex. A ("Martinez Empact Agreement"). Under the Empact Agreement, the Holt Plaintiffs agreed to "us[e] the arbitration procedure described in [the employee handbook] as the exclusive method of resolving any dispute [the Holt Plaintiffs] may have relating to termination of [their] employment (including constructive discharge) and/or claims of employment discrimination or harassment." Holt Empact Agreement; Martinez Empact Agreement. The Warner Defendants are not a party to the Empact Agreement. *See id.* ¶ 30. The Empact Agreement also contains a No-Fault Separation Pay Clause, which mandates that the Four Seasons pay employees a pre-calculated amount of Severance Pay in the event of a No-Fault Termination. *See id.* ¶ 38. The clause provides for exceptions to the severance pay requirement "[i]n the event of the sale of the [Biltmore], a change in ownership resulting from the loss of or change . . . in the [Management Agreement], including but not limited to the relinquishment or loss of control of any portion of [the Biltmore's] operations, and the new hotel employers offers continuing 'comparable Employment,' then [the Holt Plaintiffs] will not be entitled to No-Fault Separation Pay even if [the Holt Plaintiffs] decline the offer of continuing employment." *Id.* ¶ 39.

---

[1] The facts described herein are taken from the First Amended Complaint. *See generally* ECF No. 14 ("FAC" or "First Amended Complaint").

2

On March 20, 2020, the Biltmore closed due to country-wide restrictions caused by the spread of the COVID-19 virus. *See id.* ¶ 44. That day, Four Seasons issued a memo informing the Biltmore's employees that they were being immediately placed on a furlough due to the COVID-19 restrictions. *See id.* ¶ 45. On June 12, 2020, authorities in Santa Barbara County cleared businesses, including hotels, to reopen; however, the Biltmore remained closed. *See id.* ¶ 46.

As of the filing of the First Amended Complaint on April 14, 2022, the Biltmore had not yet reopened, and Four Seasons continues to consider Biltmore employees, including the Holt Plaintiffs, "furloughed." *See id.* ¶ 69. Because they are classified as being on temporary furlough but not terminated for no-fault, the Holt Plaintiffs are unable to recover No-Fault Separation Pay. *See id.* ¶ 72. Moreover, resignation by the Holt Plaintiffs would result in forfeiture of any potential Separation Pay, among other benefits. *See id.*

## II.  Procedural History

On January 26, 2022, the Holt Plaintiffs filed the instant action against the Warner Defendants in the California Superior Court for the County of Santa Barbara. ECF No. 1-1. On March 21, 2022, the case was removed to federal court. ECF No. 1. On March 28, 2022, the Warner Defendants filed the instant Motion to Compel Arbitration, Dismiss Class Claims, and Stay Proceedings. ECF No. 10 ("Mot." or "Motion" or "Motion to Compel Arbitration"). On April 14, 2022, the Holt Plaintiffs filed a First Amended Complaint, alleging five causes of action: (1) intentional interference with contract; (2) intentional interference with prospective economic advantage; (3) negligent interference with prospective economic advantage; (4) intentional misrepresentation; and (5) unjust enrichment. *See generally* FAC. The FAC was also filed on behalf of a class of "approximately 450 other similarly-situated individuals" employed by Four Seasons at the Biltmore. *Id.* ¶ 2. On April 28, 2022, the Warner Defendants filed a Motion to Dismiss the First Amended Complaint (ECF No. 17) and Motion to Strike Paragraph 68 of the First Amended Complaint (ECF No. 18). All three motions were fully briefed on June 1, 2022. ECF Nos. 22 ("Opp'n"), 23–26, 27 ("Reply"). With their Opposition, the Holt Plaintiffs filed Evidentiary Objections to the Declaration of James Cathcart filed in support of the Motion to Compel

Arbitration. ECF No. 22-4.[2] On June 2, 2022, the Warner Defendants filed Evidentiary Objections to the Declarations of Andreza Holt, Christopher Martinez, and Nicole K. Ricotta filed in support of the Holt Plaintiffs' Opposition. ECF No. 28.[3]

## MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY PROCEEDINGS

### I. Legal Standard

Under Section 2 of the Federal Arbitration Act ("FAA"), arbitration clauses in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).

In determining whether to compel arbitration, the court must consider two gateway factors: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). Moreover, arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 343 (internal quotation marks omitted) (citing *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). The Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

It has long been established that a contract containing an arbitration clause gives rise to a presumption of arbitrability. *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)); *see also*

---

[2] The Court overrules the Holt Plaintiffs' objections to the Declaration of James Cathcart.
[3] The Court overrules the Warner Defendants' objections to these declarations.

*Three Valleys Mun. Water Dist. v. E. F. Hutton & Co.*, 925 F.2d 1136, 1139 (9th Cir. 1991) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."). "But arbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit." *Three Valleys Mun. Water Dist.*, 925 F.2d at 1139 (internal quotation marks omitted). Arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 339.

However, a nonsignatory to an arbitration agreement "may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1129 (9th Cir. 2013). "Because generally only signatories to an arbitration agreement are obligated to submit to binding arbitration, equitable estoppel of third parties in this context is narrowly confined." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013) (citing *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009)). The Ninth Circuit in *Goldman v. KPMG, LLP*, established that

> [w]here a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement.

*Kramer*, 705 F.3d at 1128–29 (citing *Goldman v. KPMG, LLP*, 92 Cal. Rptr. 3d 534 (2009)) (alteration in original) (internal quotation marks and citations omitted). Such a rule reflects the policy that a plaintiff may not, "on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *Goldman*, 92 Cal. Rptr. 3d at 543 (quoting *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 528 (5th Cir. 2000)).

## II. Discussion

The Warner Defendants argue that they are entitled to compel arbitration of the Empact Agreement under the doctrine of equitable estoppel. The Holt Plaintiffs argue that because the Warner Defendants are not parties to the Agreement, the Agreement does not cover the claims against them, and they therefore are not entitled to enforce it.[4]

### a. The Warner Defendants May Enforce the Empact Agreement Under the Doctrine of Equitable Estoppel.

The Warner Defendants do not dispute that they are not parties to the Empact Agreement between the Holt Plaintiffs and Four Seasons. Mot at 8. Rather, they argue that they nonetheless have the authority to enforce the Agreement's arbitration clause under the doctrine of equitable estoppel because: (1) the Holt Plaintiffs must rely on the terms of the Empact Agreement in asserting their claims against the Ty Warner Plaintiffs and their claims are intimately founded in and intertwined with the Empact Agreement, Mot. at 14–17; and (2) the Holt Plaintiffs allege substantially interdependent and concerted misconduct by both Four Seasons and the Warner Defendants that are intimately connected with the obligations of the underlying agreement.

#### i. The Holt Plaintiffs Relied on the Terms of the Empact Agreement and Their Claims Are Intimately Founded In and Intertwined with the Empact Agreement.

Under the first *Goldman* prong, "merely making reference to an agreement with an arbitration clause is not enough." *Goldman*, 92 Cal. Rptr. 3d at 541. However, "[b]y relying on contract terms in a claim against a non-signatory defendant, even if not exclusively, a plaintiff may be equitably estopped from repudiating the arbitration clause contained in that agreement." *Boucher v. Alliance Title Co.*, 25 Cal. Rptr. 3d 440, 446 (2005). The focus of such analysis "is on the nature of the claims asserted by the plaintiff against the non-signatory defendant." *Id.* at 447. Therefore, "that the claims are cast in tort rather than contract does not avoid the arbitration clause." *Id.* In fact,

---

[4] The Holt Plaintiffs, in their Opposition, neither dispute that the arbitration agreement is an enforceable contract, nor that the class action waiver is valid and enforceable. Rather, the sole argument set forth in their Opposition is that the scope of the Empact Agreement does not cover their claims against the Warner Defendants because the Warner Defendants are not parties to the Agreement.

the Ninth Circuit has recognized that "many of the California cases permitting non-signatories to compel arbitration under an equitable estoppel theory involve contract-based causes of action, such as tortious interference . . . ." *Murphy*, 724 F.3d at 1231 n.7.

The Holt Plaintiffs have alleged claims of intentional interference with the Empact Agreement, intentional and negligent interference with the Holt Plaintiffs' prospective economic advantage, intentional misrepresentation, and unjust enrichment. *See generally* FAC. With respect to these claims, the First Amended Complaint states in relevant part:

> 93. As alleged herein, **WARNER Defendants tortiously and maliciously interfered with the contractual interests under the Empact Agreement and other agreements between Plaintiffs and Class Members and FOUR SEASONS**.
> . . .
> 102. At all relevant times, WARNER Defendants **were and are aware of the economic relationship between Plaintiffs and Class Members and FOUR SEASONS that contained probable prospective economic advantages** to Plaintiffs and Class Members.
> 103. As alleged herein, **WARNER Defendants tortiously and maliciously interfered with Plaintiffs' and Class Members' probable prospective economic advantages arising from their economic relationship with FOUR SEASONS.** Plaintiffs and Class Members are informed and believe, and thereon allege, that this interference included, but is not limited to the following: (1) repeatedly intentionally and falsely representing to Plaintiffs and Class Members, FOUR SEASONS, and the community of Santa Barbara that they would reopen the BILTMORE on various, successive dates; (2) intentionally and falsely representing to Plaintiffs and Class Members, FOUR SEASONS, and the community of Santa Barbara that their reasons for keeping the BILTMORE closed; (3) refusing to reopen the BILTMORE for a period of over two years and counting; **and (4) refusing to acknowledge that Plaintiffs and Class Members are not on a temporary furlough, but are laid-off employees entitled to severance pay under the Empact Agreement.**
> . . .
> 114. Plaintiffs and Class Members are informed, believe and thereon allege that **Defendants breached their duty of care by disrupting and interfering with Plaintiffs' and Class Members' probable prospective economic advantages arising from their economic relationship with FOUR SEASONS.** Plaintiffs and Class Members are informed and believe, and thereon allege, that this interference included, but is not limited to the following: (1) repeatedly intentionally and falsely representing to Plaintiffs and Class Members, FOUR SEASONS, and the community of Santa Barbara that they would reopen the BILTMORE on various, successive dates; (2) intentionally and falsely representing to Plaintiffs and Class Members, FOUR SEASONS, and the community of Santa Barbara that their reasons for keeping the BILTMORE closed; (3) refusing to reopen the BILTMORE for a period of over two years and counting; and **(4) refusing to acknowledge that Plaintiffs and Class Members are not on a temporary furlough, but are laid-off employees entitled to**

> severance pay under the Empact Agreement.
>
> . . .
>
> 128. Plaintiffs and Class Members **have been harmed by WARNER Defendants' representations in that they cannot work but they are not declared unemployed and so they are not only caught in a limbo of waiting as a furloughed employee until the hotel reopens. Since they are not declared "laid-off" they cannot receive their severance pay under the Empact Agreement.** They cannot draw off of their 401ks unless they resign their employment. Plaintiffs and Class Members have suffered damages as a result in an amount to be proven at trial.
>
> . . .
>
> 132. In undertaking the aforementioned actions, **WARNER Defendants have been unjustly enriched at the expense of Plaintiffs and Class Members** and have benefited to the detriment of Plaintiffs and Class Members.
>
> 133. Plaintiffs and Class Members are **entitled to restitution of all money that unjustly enriched WARNER Defendants**, as an alternative if there is no adequate remedy at law.
>
> 134. **As a direct and proximate result of WARNER Defendants' unjust enrichment, Plaintiffs and Class Members have been damaged in an amount equal to each of their severance pay amounts due under the Empact Agreement** and other restitution according to proof.

FAC ¶¶ 93, 102–03, 114, 128, 132–34 (emphasis added).

In *Boucher*, the California Court of Appeal found that the plaintiff's claims against the defendant "rel[ied] on, [made] reference to, and presume[d] the existence of the . . . employment agreement with [the third-party signatory]" where, among other factors, the plaintiff alleged claims of intentional and negligent interference with the employment agreement and intentional interference with the plaintiff's economic advantage that "all ma[d]e reference to and presume[d] the existence of the validity of the employment contract." *Id.* at 447. The court therefore concluded that the plaintiff's claims were "intimately founded in and intertwined with the . . . employment agreement" and that he was therefore equitably estopped from avoiding arbitration. *Id.*

The first three claims alleged by the Holt Plaintiffs are nearly identical to those alleged against the non-signatory defendant in *Boucher*—in both cases, the plaintiffs alleged intentional interference with the employment agreement in question, as well as intentional interference with the plaintiff's economic advantage as a result of interference with the employment agreement. *See* FAC ¶¶ 93, 102–03. The Holt Plaintiffs also bring a claim for negligent interference with their economic advantage. *See id.* ¶ 114.

All three of these claims relied on, referred to, and presumed the existence of the Empact Agreement. The intentional interference with contract claim specifically references the Empact Agreement. *See id.* ¶ 93 (alleging that the Warner Defendants "tortiously and maliciously interfered with the contractual interests under the *Empact Agreement*" (emphasis added)). Additionally, the intentional and negligent interference with economic advantage claims state that the Warner Defendants "breached their duty of care" and "tortiously and maliciously interfered with" Plaintiffs' and Class Members' probable prospective economic advantages arising from their economic relationship with FOUR SEASONS" by, among other things, "refusing to acknowledge that Plaintiffs and Class Members are not on a temporary furlough, but are laid-off employees entitled to severance pay under the *Empact Agreement*." *Id.* ¶¶ 103, 114 (emphasis added).

The Holt Plaintiffs contend that their intentional misrepresentation claim makes no reference to the Empact Agreement. However, with respect to the intentional misrepresentation claim, the Holt Plaintiffs allege that they "have been harmed by [the Warner Defendants'] representations in that they cannot work but they are not declared unemployed and so they are . . . caught in a limbo of waiting as [] furloughed employee[s] until the hotel reopens. *Since they are not declared 'laid-off' they cannot receive their severance pay under the Empact Agreement*." *Id.* ¶ 128. The Holt Plaintiffs have therefore clearly referenced the Empact Agreement in pleading the damages element of their intentional misrepresentation claim.[5]

With respect to the unjust enrichment claim, the Holt Plaintiffs allege that the Warner Defendants were "unjustly enriched at the expense of" the Holt Plaintiffs and that the Holt Plaintiffs, as "a direct and proximate result" of the unjust enrichment, "*have been damaged in an amount equal to each of their severance pay amounts due under the Empact Agreement.*" *Id.* ¶¶ 132, 134

---

[5] Under California law, "[t]he essential elements of a count for intentional misrepresentation are (1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage." *Chapman v. Skype Inc.*, 162 Cal. Rptr. 3d 864, 866 (2013).

(emphasis added). Here, the Holt Plaintiffs have clearly referenced the Empact Agreement in pleading their unjust enrichment claim.[6]

As a result, the Court finds that the Holt Plaintiffs' claims against the Warner Defendants are "founded in and intertwined with" the Empact Agreement.[7] Therefore, under the doctrine of equitable estoppel, the Warner Defendants are entitled to enforce the arbitration provision of the Empact Agreement. The Court therefore GRANTS the Motion to Compel Arbitration. As a result, the remaining Motion to Dismiss the First Amended Complaint and Motion to Strike Paragraph 68 of the First Amended Complaint need not be addressed, as they are MOOT.

## **CONCLUSION**

In light of the foregoing, the Court hereby GRANTS the Motion to Compel Arbitration, Dismiss Class Claims, and Stay Proceedings (ECF No. 10) and ORDERS as follows:

1. The Holt Plaintiffs must arbitrate the claims alleged in the First Amended Complaint on an individual basis;
2. The class claims alleged in the Holt Plaintiffs' First Amended Complaint are DISMISSED;
3. Litigation of the claims in the First Amended Complaint are STAYED in their entirety pending the outcome of the arbitration proceedings.

---

[6] "The elements of an unjust enrichment claim are the 'receipt of a benefit and [the] unjust retention of the benefit at the expense of another.'" *Peterson v. Cellco Partnership*, 80 Cal. Rptr. 3d 316, 323 (2008) (quoting *Lectrodryer v. SeoulBank*, 91 Cal. Rptr. 2d 881 (2000)). Here, the Holt Plaintiffs' reference to the Empact Agreement quantifies the benefit received by the Warner Defendants under the first element.

[7] The Holt Plaintiffs argue that: (1) because the Warner Defendants lack a parent/subsidiary relationship or co-employer relationship with Four Seasons, the relationship between the Warner Defendants and Four Seasons is not sufficiently intertwined; and (2) because no master contract or subcontract exists, there is an "insufficient relationship" between the Warner Defendants' contract with Four Seasons and the Empact Agreement. Opp'n at 15. However, the doctrine of equitable estoppel does not require that there be a parent/subsidiary relationship, co-employer relationship, or master contract/subcontract arrangement. *See Franklin v. Cmty. Regional Med. Ctr.*, 998 F.3d 867 (9th Cir. 2021) (holding that plaintiff was equitably estopped from avoiding arbitration with non-signatory without any discussion of parent/subsidiary relationship, co-employer relationship, or master contract/subcontract arrangement). Rather, "[t]he fundamental point is that a party may not make use of a contract containing an arbitration clause and then attempt to avoid the duty to arbitrate by defining the forum in which the dispute will be resolved." *Boucher*, 25 Cal. Rptr. 3d at 447 ("[T]he federal decisional authority is not limited, as plaintiff suggests, to cases in which a contract with a subsidiary corporation is relied upon to compel arbitration with a parent entity.").

4. The parties shall file a joint report every ninety (90) days, starting from the date of this Order. The parties are also directed to jointly notify the Court within forty-eight (48) hours of the conclusion of the arbitration proceeding.

5. The Warner Defendants' Motion to Dismiss the First Amended Complaint (ECF No. 17) is DENIED as MOOT; and

6. The Warner Defendants' Motion to Strike Paragraph 68 of the First Amended Complaint (ECF No. 18) is DENIED as MOOT.

IT IS SO ORDERED.

Dated: June 27, 2022

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge